UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

C R U SHREVEPORT, LLC                     CIVIL ACTION NO. 20-cv-151

VERSUS                                    JUDGE DOUGHTY

UNITED NATIONAL INSURANCE CO              MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

CRU Shreveport, LLC ("CRU") is the former owner of a Wyndham Garden hotel in Shreveport that suffered water damage when a boiler burst.  CRU filed an earlier lawsuit against its insurer, United National Insurance Company ("United"), to recover damages under a policy.  The court granted summary judgment for United and dismissed the first suit because the court found that, after the suit was filed, CRU assigned its interest in the hotel and the insurance claim to another entity.  CRU appealed and, while the appeal was pending, had the owner of the insurance-claim rights reassign them to CRU.  With its right to pursue the claim restored, CRU then filed this second civil suit against United.

Before the court is United's Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) (Doc. 11) on the grounds that (1) the first lawsuit is pending on appeal and deprives this court of subject matter jurisdiction over the essentially identical suit, (2) this second suit is a wrongful attempt to circumvent the federal rules of civil procedure by filing a new suit while the initial suit is on appeal, (3) the new suit is untimely, and (4) the new suit is barred by res judicata.  United also raised in its reply memorandum an argument that

CRU does not own the right to file this second suit.  For the reasons that follow, it is recommended that the motion to dismiss be denied.

**Jurisdictional Arguments are Moot**

United's motion to dismiss originally raised Rule 12(b)(1) objections to district court jurisdiction over this case based on the pendency of the appeal in the first suit.  After United filed its motion, the Fifth Circuit affirmed the dismissal of the first suit.  United then conceded in its reply (Doc. 24, pg. 2) that its jurisdictional arguments are now "likely moot," and it offered no argument for their continued viability.  The undersigned agrees that those jurisdictional objections are moot, leaving only challenges made pursuant to Rule 12(b)(6).

**Relevant Facts**

Generally, a court ruling on a Rule 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 338 (5th Cir. 2008) (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S.Ct. 2499, 2509 (2007)).  That includes the record of the first suit.  In re Deepwater Horizon, 934 F.3d 434, 440 (5th Cir. 2019), citing ITT Rayonier Inc. v. United States, 651 F.2d 343, 345 n.2 (5th Cir. 1981) ("A court may ... take judicial notice of its own records …).  Of course, the court must "accept all factual allegations in the complaint as true."  Tellabs, supra.  Set forth below is a summary of the relevant facts found in the record of the first suit and the complaint filed in this case.

CRU financed the purchase of a Wyndham Garden hotel with a loan from GreenLake Real Estate Fund, LLC ("GreenLake").  A boiler in the hotel's HVAC system burst in 2016 and caused water damage to a number of hotel rooms.  CRU filed a claim with its insurer, United, and the insurer made a payment on the initial claim.  CRU then claimed the damage to the hotel was much more extensive than it originally thought, and this led to a dispute about the extent of coverage under the policy.

Business at the hotel suffered due to a number of rooms being unavailable for an extended time, and CRU defaulted on its mortgage payments to GreenLake.  CRU and GreenLake entered into a forbearance agreement in 2017 that required CRU to execute a partial dation en paiement that, if CRU defaulted on the forbearance agreement, would be recorded and convey the hotel and associated property to GreenLake.

CRU filed its first suit against United in June 2018 under civil action number 5:18-cv-0751.  CRU alleged that United breached the insurance contract by failing to fully reimburse CRU for water-related damage to rooms and that United breached its duty of good faith and fair dealing under Louisiana insurance penalty statutes.  The parties consented to referral of the case to Magistrate Judge Karen Hayes for all proceedings.

In October 2018, about four months after CRU filed suit against United, GreenLake recorded the dation in Caddo Parish, which triggered the conveyance of the hotel and all movable property associated with it from CRU to GreenLake.  United later learned about the conveyance, and it filed a motion for summary judgment that argued CRU no longer had a right of action against United because CRU gave up any rights it had in the hotel or

the movable property associated with it—including insurance recovery rights—via the dation.

Magistrate Judge Hayes granted United's motion for summary judgment, and the Fifth Circuit affirmed in a decision issued June 29, 2020.  The Court looked to the definition of movable property covered by the dation and said that it was difficult to imagine a more far-reaching definition than the one included.  The dation unambiguously conveyed all movable property belonging to CRU to GreenLake, and that included CRU's right to recover proceeds under its policy with United.  CRU Shreveport, LLC v. United National Insurance Company, __ Fed. Appx. __, 2020 WL 3524655 (5th Cir. 2020).  The appellate court issued its mandate on July 21, 2020.

CRU commenced this action by filing a new complaint in January 2020 while the appeal was pending in the first case.  The new complaint essentially repeats the allegations from the first suit that United is responsible for certain claims made pursuant to the policy and liable for statutory penalties.  CRU adds some new allegations with respect to its right to pursue the claims.  CRU prays for a judgment in excess of $20,000,000 in replacement cost value, plus additional awards for emergency and temporary repair expenses, business income losses, consequential damages, and statutory penalties and attorney fees.

CRU alleges that GreenLake, after it received the hotel and related property via the dation, transferred the property to 70th Hospitality, LLC.  Complaint, ¶ 28.  In January 2020, while the first case was pending on appeal, 70th Hospitality assigned all of its interest in the burst boiler claim to CRU.  ¶ 33.  The exhibits to the complaint do not include the assignment to CRU, but a copy is attached to a sur-reply (Doc. 27) and reflects that 70th

Hospitality assigned its rights to CRU in exchange for payment to GreenLake of 80% of CRU's net recovery, if any.

**Ownership of the Claim at Issue**

United argues in its reply memorandum (Doc. 24) that it disagrees with CRU's contention that CRU now "owns" the right to pursue this lawsuit, and it says that it has not seen anything to support the existence of the alleged assignment.  But a plaintiff need not marshal evidence to survive Rule 12(b)(6) review.  It need only allege facts, which must be accepted as true, that state a claim to relief that is plausible on its face.  Calogero v. Shows, Cali & Walsh, L.L.P., __F. 3rd. __, 2020 WL 4745575, *3 (5th Cir. 2020).  CRU made sufficient allegations of the assignment in its complaint.  CRU also presented a copy of the assignment as an exhibit to its sur-reply (Doc. 27).  United's motion to dismiss should be denied with respect to this argument.

**Timeliness**

**A. United's Burden**

United argues that this suit is untimely based on a two-year limitations period in the policy.  Invocation of a limitations period is an affirmative defense that "places the burden of proof on the party pleading it."  Frame v. City of Arlington, 657 F.3d 215, 239 (5th Cir. 2011).  Under federal pleading requirements, "a plaintiff is not required to allege that his claims were filed within the applicable statute of limitations."  Id. at 239-40.  That is why "defenses are generally not the proper subject of Rule 12(b)(6) motions" and may be successful only if the grounds for the defense "clearly appear on the face of the plaintiff's complaint."  Songbyrd, Inc. v. Bearsville Records, Inc., 104 F.3d 773, 776 (5th Cir. 1997).

Dismissal under Rule 12(b)(6) based on statute of limitations is proper only "where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." Jones v. Alcoa, Inc., 339 F.3d 359, 366 (5th Cir. 2003).

### B. State Law and the Policy Provision

CRU attached a copy of the United policy as an exhibit to its complaint, which makes the policy a part of the complaint for all purposes, including the assessment of a Rule 12(b)(6) motion. U.S. ex rel. Riley v. St. Luke's Episcopal Hosp., 355 F.3d 370, 375 (5th Cir. 2004). On page 35 of the 72-page exhibit, the policy provides:

D. Legal Action against Us

No one may bring a legal action against us under this Coverage Part unless:

1.     There has been full compliance with all of the terms of this Coverage Part; and

2.     The action is brought **within 2 years** after the date on which the direct physical loss or damage occurred. (Emphasis added.)

The provision complies with Louisiana law, which provides that an insurance contract may not contain a limit on the right of action against the insurer to a period of less than 24 months after the inception of the loss when the claim is a first party claim. La. R.S. 22:629(B).

CRU alleges that the boiler exploded on September 20, 2016. Complaint, ¶ 9. CRU did not file this second suit until January 31, 2020, which was more than two years after the physical loss or damage occurred. CRU argues that the second suit is nonetheless timely because its first suit was timely, filed on June 5, 2018, and interrupted the limitations period until the finality of the appeal (the mandate issued July 21, 2020), by which time

this second suit had already been filed.  United responds that the two-year period in the policy is contractual so is not subject to suspension or interruption.

### C. First Party Claims and Interruption of the Limitations Period

Louisiana law allows various periods of liberative prescription to bring civil actions. The Civil Code provides that certain events suspend or interrupt the periods.  Among the best known is that prescription is interrupted when the obligee commences action against the obligor in a court of competent jurisdiction and venue.  La. Civ. Code art. 3462.  The interruption continues as long as the suit is pending.  La Civ. Code art. 3463.  Prescription begins to run anew from the last day of interruption.  La. Civ. Code art. 3466.

The issue before the court is whether those principles apply to the two-year period allowed for CRU to file suit, or whether they are inapplicable because the two-year period is provided by a contract rather than state law.  In this diversity case, where the court must apply Louisiana substantive law, "we look to the final decisions of the Louisiana Supreme Court."  Apache Deepwater, LLC v. W&T Offshore, Inc., 930 F.3d 647, 654 (5th Cir. 2019).  Absent guidance from that court, the federal court must make an Erie guess to determine "how [the Louisiana Supreme Court] would resolve the issue if presented with the same case." IberiaBank Corporation v. Illinois Union Insurance Company, 953 F.3d 339, 344–45 (5th Cir. 2020), quoting In re Katrina Canal Breaches Litig., 495 F.3d 191, 206 (5th Cir. 2007).  In doing so, the federal court is "not strictly bound" by decisions of Louisiana's intermediate courts. IberiaBank 953 F.3d at 345.

United points to a line of cases decided by the Louisiana Fourth Circuit in which first party insurance claimants filed suit beyond the period allowed by their policy but

claimed that the period was interrupted, particularly by acknowledgment of their right by partial payment. See La. Civ. Code art. 3464 (interruption by acknowledgement). In one of them, Lila, Inc. v. Underwriters at Lloyd's, London, 994 So.2d 139 (La. App. 4th Cir. 2008), the appellate court faced a claim by the owner of a storm-damaged store against the issuer of a commercial insurance policy. The policy required that suit be filed within two years from the date of loss, but the owner filed suit after that period. The insurer filed an exception of prescription, and the owner argued that two unconditional payments made by the insurer were an acknowledgment sufficient to interrupt prescription. The court held that the two-year time limitation in the policy "is not a prescriptive period subject to interruption or suspension, but rather, is merely a contractual pledge or agreement by the insurance company not to plead prescription if the insured institutes legal action within the two-year time frame." Id. at 147. Dismissal of the suit as untimely was affirmed. The Fourth Circuit has also applied that holding in other first party claims such as Wolfe World, LLC v. Stumpf, 43 So.3d 311 (La. App. 4th Cir. 2010) and Crescent City Property Redevelopment Associates, LLC v. Southern Fidelity Ins., Inc., 158 So.3d 100 (La. App. 4th Cir. 2014).

CRU responds with citation to Taranto v. Louisiana Citizens Property Insurance Corporation, 62 So.3d 721 (La. 2011), in which the Supreme Court faced a first party property damage claim against an insurer that was filed beyond the period allowed by the policy and the legislative extensions that were enacted after Hurricane Katrina. The plaintiff argued that his suit was timely because the limitations period was suspended by La. C.C.P. art. 596. That article provides that liberative prescription on claims arising out

of the transactions or occurrences described in a class action petition is suspended on the filing of the petition as to all members of the class, and it begins to run again on the occurrence of certain conditions, such as the claimant opting out or the denial of a motion to certify the class.  There were two class actions filed related to Katrina claims that would operate to suspend prescription pursuant to Article 596 if such suspension were permitted on a first party claim.

The Supreme Court stated that it disagreed with the insurer's argument "that the one year period in the insurance policy is a 'contractual limitations' period and not a liberative prescriptive period subject to the suspension principles of [Article] 596."  <u>Taranto</u>, 62 So.3d at 732.  The court added that parties to an insurance contract may limit the prescriptive period as allowed by law, but they may not "contractually 'opt out' of prescription, abrogate the prescriptive periods established by law, or divest said time limitations of their prescriptive nature."  <u>Id</u>.  Thus, "as a one-year prescriptive period prescribed by law, the time limitations set forth in the policy is subject to the procedural rules of suspension of prescription."  <u>Id</u>.

At the time, state law provided that no insurance contract could limit the right of action for a period of less than 12 months after inception of the loss.  The policy contained a provision—similar to the policy in this case—that no action could be brought unless the policy provisions were complied with and the action was started within one year after the date of loss.  The Supreme Court looked to its precedent, which stated that where the law directly *or indirectly* prescribes a limitation, the period should be controlled and governed by the general provisions of the law relating to a limitations period.  The court then stated:

"[W]e hold that the contractual stipulation in the LCPIC policy is actually one imposed by law, and not contract, and thus the laws with respect to interruption and suspension apply, including [Article] 596." Taranto, 62 So.3d at 734.  The limitations period in the policy was "at least indirectly, if not directly, mandated by law" so "it is a statutory as opposed to purely contractual period." Id. at 734-35.

Justice Knoll concurred to emphasize, among other things, her opinion that the policy limitations period was subject to general rules governing prescription.  She said that the insurer's argument that the limitations provision was contractual, not prescriptive, so not subject to the rules governing the tolling of prescription was a "fatal flaw" in its argument.  She noted that the insurance code allowed parties to shorten what would be a ten-year prescriptive period for suit on a contract to a lesser time, but that shorter time is still subject to the procedural rules of suspension of prescription.

Justice Weimer also concurred and emphasized the holding in Tracy v. Queen City Fire Ins. Co., 61 So. 687 (La. 1913), a case that is particularly applicable to this dispute.  The fire policy in Tracy stipulated, as required by state law, that no suit could be brought on the policy unless commenced within 12 months after the fire.  A timely suit on the policy was filed within four months after the fire, but it was dismissed on a procedural exception.  More than one year after the fire, a second suit was filed.  The insurer filed an exception of prescription, arguing that the statutory rule for interruption of prescription by filing the first suit did not apply because the prescriptive period was contractual and not statutory.  The Supreme Court of Louisiana rejected that argument because state law required policies to conform to a one-year limitations period, and the court believed that this rendered the

limitation period subject to the general provisions of the law relating to prescription, including interruption by judicial demand.

The Fourth Circuit decided Crescent City three years after Taranto but adhered to its prior holdings that the period provided in a policy is contractual and not subject to interruption.  It acknowledged Taranto in a footnote but said the claimant's reliance on it was misguided.  The appellate court reasoned that Taranto did not apply to the property loss claim before it because Taranto involved class action lawsuits, "and the finding that the plaintiffs' lawsuits were timely did not rest upon any interpretations that the deadline date to file suit within the policies was statutory."  Crescent City, 158 So.3d at 104 n. 6.

The undersigned respectfully disagrees with the distinction offered in Crescent City. Taranto appears to have rejected the rationale that a policy period is solely a matter of contract and not subject to suspension or interruption.  There is no indication in the Supreme Court's decision that it is limited to suspension by means of the class action provision in Article 596.  Rather, the court stated in broad terms that the limitations provision in the policy was considered to be imposed by law, not contract, and "thus the laws with respect to interruption and suspension apply, including [Article] 596."  Taranto, 62 So.3d at 734.  And Tracy v. Queen City, cited in both the majority opinion and Justice Weimer's concurring opinion, indicates that the first suit filed by CRU did interrupt the two-year period and render this second suit timely.  Reasonable minds could perhaps differ, but the undersigned is of the opinion that the most faithful application of Erie and the decisions of the Supreme Court of Louisiana require denial of United's motion to dismiss based on its limitations defense.

**Procedural Objections**

United's motion to dismiss argues that the second suit is an attempt to circumvent Federal Rules of Civil Procedure 56, 59, and 60 by filing a new suit while the first suit was still on appeal.  United argues that CRU could have avoided the litigation by including a provision in the dation that retained its rights to pursue the insurance claim, or it could have obtained the assignment of the rights before the court ruled on the motion for summary judgment in the first case.  CRU may have saved itself and everyone else a lot of trouble if it had taken one of those steps, but United does not cite any authority that would prohibit a party from later exercising such rights in similar circumstances unless they are barred by res judicata, a defense that is discussed below.

**Res Judicata**

**A. Procedural Objection**

After the Fifth Circuit affirmed the dismissal of the first suit, United supplemented its motion to dismiss and asserted the defense of res judicata.  CRU objects to United asserting the defense in a motion to dismiss.  Generally, a res judicata contention is an affirmative defense that is more appropriately presented in a motion for summary judgment rather than a motion to dismiss that must be decided based solely on the pleadings.  <u>Test Masters Educational Services, Inc. v. Singh</u>, 428 F.3d 559, 570 n. 2 (5th Cir. 2005).  United argues that the defense can be decided on its motion to dismiss because the elements appear on the face of the pleadings and the court may take judicial notice of the previous judgments and opinions, which are matters of public record.  <u>See</u> <u>Anderson v. Wells Fargo Bank, NA</u>, 953 F.3d 311, 314 (5th Cir. 2020).

The Fifth Circuit has said that "dismissal under Rule 12(b)(6) is appropriate if the *res judicata* bar is apparent from the complaint and judicially noticed facts and the plaintiff fails to challenge the defendant's failure to plead it as an affirmative defense." Anderson, 953 F.3d at 314.  Those conditions are not met because CRU did challenge the procedural propriety of raising the affirmative defense via a Rule 12(b)(6) motion.  It may be that all of the facts needed to decide the defense are before the court—in the current complaint and the record of the first case—but it is better that such an important issue, potentially dispositive of a multi-million dollar claim, be decided in an indisputably appropriate procedural manner.  United will suffer no undue prejudice by being required to file an answer that asserts the affirmative defense and then file a motion for summary judgment that focuses on that defense.

### B. Lack of Showing on the Merits

United urges that federal law governs its defense, and it appears that it does, in a roundabout way.  "As a matter of federal common law, federal courts sitting in diversity apply the preclusion law of the forum state unless it is incompatible with federal interests." Anderson v. Wells Fargo Bank, N.A., 953 F.3d 311, 314 (5th Cir. 2020), citing Semtek Int'l Inc. v. Lockheed Martin Corp., 121 S.Ct. 1021 (2001).  That forum state is Louisiana, but Louisiana courts "have repeatedly confirmed that federal law is applicable to consideration of whether a federal court judgment has res judicata effect." Jones ex rel. Jones v. GEO Group, Inc., 6 So.3d 1021, 1025 (La. App. 3rd Cir. 2009), citing cases including Pilié & Pilié v. Graham, 547 So.2d 1305 (La. 1989) (federal res judicata law

applied to judgment by federal court that exercised diversity jurisdiction).[1]  Thus, federal

law says to look to Louisiana law, and Louisiana law say that federal res judicata law

applies.  Frank C. Minvielle LLC v. Atlantic Refining Co., 337 Fed. Appx. 429, 434, (5th

Cir. 2009) (unpublished).[2]

"Claim preclusion, or *res judicata*, bars the litigation of claims that either have been

litigated or should have been raised in an earlier suit."  In re Southmark Corp., 163 F.3d

925, 934 (5th Cir. 1999).  A prior federal court judgment is preclusive if four elements are

present: (1) the parties are identical or in privity; (2) the judgment in the prior action was

rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final

judgment on the merits; and (4) the same claim or cause of action was involved in both

actions.  Id.

CRU challenges United's ability to establish the third element: there was a final

judgment on the merits in the prior insurance claim suit.  United responds that the prior

judgment dismissed the case with prejudice, and under federal law a dismissal designated

"with prejudice" is normally an adjudication on the merits for purposes of res judicata.

---

[1] Pilié & Pilié expressed the belief that the state court was required to apply federal
preclusion law to a federal diversity judgment. But Semtek later said that the state court
should give federal diversity judgments no more effect than is accorded to state
judgments.

[2] In an earlier published decision, the Fifth Circuit said that it would reach the same
outcome regardless of whether Louisiana or federal res judicata law applied, so it "need
not decide, in the present case, whether the Louisiana res judicata statute, La.Rev.Stat. §
13:4231, is incompatible with any federal interest."  American Home Assur. Co. v.
Chevron, USA, Inc., 400 F.3d 265, 272 n.20 (5th Cir. 2005). Given the lack of a
published Fifth Circuit that has decided the issue post-Semtek, the answer to which law
governs in these circumstances is less than certain.

Fernandez-Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284 n.8 (5th Cir. 1993).  See also
Stevens v. Bank of America, N.A., 587 Fed. Appx. 130, 133 (5th Cir. 2014) ("Generally a
federal court's dismissal with prejudice is a final judgment on the merits for res judicata
purposes.").

Fernandez-Montes cited Moore's Federal Practice, which adds: "In general, a
judgment will be considered on the merits if it is rendered upon consideration of the legal
claim, as distinguished from consideration of an objection to subject-matter jurisdiction,
personal jurisdiction, service of process, venue, or any other ground that does not go to the
legal or factual sufficiency of the claim to relief."  18 Moore's Federal Practice - Civil §
131.30[3][a] (2020).  "For the purposes of res judicata, the definition of a judgment on the
merits is one which is based on legal rights as distinguished from mere matters of practice,
procedure, jurisdiction, or form. Traditionally, a judgment is on the merits if it completely
disposes of the underlying cause of action, or determines that the plaintiff has no cause of
action."  Id. (cleaned up).  And "it has been held that a court in which a subsequent action
has been filed need not always accept the phrasing of a prior judgment of dismissal at face
value and may make an independent determination of its preclusive effects."  Id.

Federal courts often look to the Restatement when assessing res judicata.  See, e.g.,
B & B Hardware, Inc. v. Hargis Industries, Inc., 135 S.Ct. 1293 (2015) and Semtek, 121
S.Ct. at 1025.  Some provisions and commentary arguably favor CRU, such as "A valid
and final personal judgment for the defendant, which rests on the prematurity of the action
or on the plaintiff's failure to satisfy a precondition to suit, does not bar another action by
the plaintiff instituted after the claim has matured, or the precondition has been satisfied,

unless a second action is precluded by operation of the substantive law."  Restatement (Second) of Judgments § 20 (1982).  But comments under Section 19 point out that, while the prototype case is one in which the merits of the claim are in fact adjudicated against the plaintiff on the substantive issues, some cases have held that judgments not passing directly on the substance of the claim can operate as a bar.  Restatement (Second) of Judgments § 19 (1982), comment (a).

A similar situation was presented in Federal Treasury Enterprise Sojuzplodoimport, OAO v. Spirits Intern. B.V., 809 F.3d 737 (2d Cir. 2016).  The plaintiff first sued to enforce a trademark and rights related to a vodka brand, but the case was dismissed because the Russian Federation retained too great an interest in the mark for the plaintiff to qualify as an "assign" with standing to sue.  The Federation then assigned to the plaintiff all of its rights in the mark, and the plaintiff filed a second suit.  The district court dismissed based in part on res judicata.   The Second Circuit reversed because "[d]ismissal for lack of statutory standing is not 'on the merits' and therefore lacks res judicata effect."  Id. at 745. This case does not involve statutory standing, but it is somewhat analogous in that the first suit was dismissed for lack of a condition—ownership of the right to pursue the insurance claim—that was cured by obtaining that right by assignment.

The parties have also not specifically addressed whether the "identical parties" element is satisfied in this scenario, where the plaintiff arguably is appearing in a different capacity or quality than in the first suit.  One Louisiana decision rejected res judicata in a similar setting.  The plaintiffs in Wagoner v. Chevron USA, Inc., 121 So. 3d 727 (La. App. 2 Cir. 2013) filed a first suit against oil companies to recover for damages allegedly

inflicted on their land before the plaintiffs acquired ownership. The case was dismissed for no right of action because none of the sales to the plaintiffs included a specific assignment of the right to sue for property damages.  After the dismissal, the plaintiffs obtained an assignment of those rights from the prior owners, and they filed a second suit against the oil companies. The district court dismissed the second action based on res judicata, but the Second Circuit Court of Appeal reversed.  It held that res judicata did not bar the second suit because the assignment altered the capacity in which the plaintiffs appeared in the second case, so the "identical parties" element was not satisfied. Wagoner did not apply federal law, but both state and federal res judicata doctrine require the same parties element.

The res judicata defense warrants more focused attention than was provided by the current briefs, which were required to address it and several other issues.  Deferring a ruling on the defense until it is presented in a motion for summary judgment will moot CRU's procedural objections and allow a more thorough briefing by the parties.  That briefing should attempt to cite decisions or other sources of law that have addressed issues similar to those presented by this case.  United is attempting to take advantage of the dation and assignment to avoid ever having to defend the merits of a claim against its policy in excess of $20,000,000.  If it is to succeed, it must make an adequate showing of entitlement to res judicata under applicable law.

Accordingly,

It is recommended that United's Motion to Dismiss (Doc. 11) be denied.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 1st day of September, 2020.

Mark L. Hornsby
U.S. Magistrate Judge